Kaye Fleming SMITH, Appellant,

v.

David KNAPP, Appellee.

No. 18291.

Court of Civil Appeals of Texas,
Fort Worth.

Sept. 18, 1980.

Rehearing Denied Oct. 16, 1980.

Gardere, Wynne & Jaffee and B. Prater Monning, III, Dallas, for appellant.

Garrett & Burkett, and Robert D. Akers, Fort Worth, for appellee.

OPINION

SPURLOCK, Justice.

This is a suit by David Knapp, a broker, against Kaye Fleming Smith, to recover his commission for the sale of her business. Basis of the suit is a written contract. Trial was to the court, and findings of fact and conclusions of law were filed. The trial court awarded Knapp his commission.

We affirm.

On or about February 3, 1977, Knapp and Kaye Fleming Smith (hereafter Fleming)

entered into a written contract. This agreement was prepared by David B. Knapp of Knapp & Co., a sole proprietorship owned by David B. Knapp. An assumed name certificate for Knapp & Co. was on file at the Tarrant County Courthouse at all times pertinent to this suit. The agreement was signed for Kaye Fleming Smith by her son, J. Paul Fleming. No issue was raised concerning the authenticity of the written agreement or the right of the parties to sign a binding contract in this manner. The agreement authorized Knapp & Co. to "handle the sale, financing, or acquisition of Kaye Fleming Boutique located at 4731 E. Lancaster under the following terms:

"1. The sales price is to be *$200,000* or any other amount satisfactory to the owners.

"2. The sales commission is to be *10%* of the gross sales price payable at close.

"3. This agreement is to be for a period of 180 days from date of approval signature, item 4 below.

"4. This agreement applies to the below listed and approved parties as individually initialled by: *Paul or Katy Fleming*."

Knapp showed the business on two different occasions–first to a couple named Minter and then to eventual buyers, Laura Ann Hamilton and Chris Hamilton Teeple. Both times the prospective buyers' names were placed on the contract and Kaye Fleming initialed and dated the entry. After showing the business to Hamilton and Teeple on January 25, 1978, negotiations through Knapp were begun. One oral and two written offers were submitted, but all were refused. Negotiations had narrowed the differences between the two parties, but no compromise was reached, primarily because Fleming wanted at least $10,000 more. This could have been accomplished while meeting the needs of Hamilton and Teeple most conveniently by lowering the inventory.

In March Knapp returned the escrow deposit to Hamilton and Teeple with the suggestion that the seller be given time to reduce the inventory through regular business, after which Knapp felt a mutually satisfactory sale could be arranged. Such a sale did in fact occur on or about June 5, 1978, as a result of direct negotiations between the parties of which Knapp later learned. The contract between Knapp and Fleming applied only to specific parties within a specific period. The sale that occurred was within the specific 180- day period to a specific party named in the restricted listing agreement.

Fleming raises five points of error. Basically these attack the court's holdings concerning: 1) interpretation of the word "handle" in the written contract and evidence thereon, and the Court's finding that Knapp had not abandoned his efforts to sell Fleming's business; 2) Knapp's nonlicensure as a lawyer; and 3) Knapp's status as a licensed broker operating a sole proprietorship.

■ Much testimony and argument revolved around the use of the word "handle" in the written contract. Recognizing the principles established in contract interpretation that the language in question is to be construed against the drafter and that the court is to recognize what the parties meant when they made the contract, we affirm the trial court's holding that Knapp's introducing the parties and conducting the early negotiations between them is sufficient to justify recovery of his commission in this particular case. Although additional conflicting testimony was also received, both Knapp and Fleming testified that the purpose of Knapp's assistance was to introduce Fleming and prospective buyers. Knapp testified that in addition to finding a buyer who eventually purchases the business, there were other services which he would perform if requested by buyer or seller. The Supreme Court in *Goodwin v. Gunter*, 109 Tex. 56, 185 S.W. 295, 296 (1916) restated the rule that "[C]ommissions are earned and the broker is entitled to their payment according to the contract if, while it [the agreement] is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfac-

tory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell." On rehearing the Supreme Court emphasized that it is possible for a broker to be regarded as the "procuring cause" of a sale if the owner chooses to conclude the negotiation directly with the buyer while knowing that the broker is still seeking to find a satisfactory arrangement within his contract terms. *Goodwin v. Gunter*, 109 Tex. 56, 195 S.W. 848 (1917). In that case the trial court misinterpreted this rule of law, so the case was remanded. Here the trial court found that Knapp did not abandon his efforts to conclude the sale, and we find no reason to disturb that holding. Fleming's first three points of error are overruled.

■ Fleming also attacks the trial court's conclusion that Knapp is not disqualified from recovering his commission because he is not a licensed lawyer. Fleming alleges that Knapp is seeking compensation for performance of legal services since he prepared documents related to the proposed sale of the business, especially in regard to the contract offers of Teeple and Hamilton to buy Fleming's business and the fact that one asset of that business was a real estate lease for the store building. Knapp had the right to record in writing his agreement with Fleming and the offers for the business from Teeple and Hamilton. He followed accepted real estate practice. The other parties were advised in writing to have the offers reviewed by legal counsel of their choice. The contracts complained of are evidence of a proposed three way agreement between Hamilton and Teeple as buyers, Fleming as seller, and Knapp as broker. The documents in question were not signed by either Knapp or Fleming, but that does not restrict Knapp from reducing to writing an agreement, had it been reached, to which he was a party. The practice of law cannot be defined so as to preclude a party from putting in writing a personal agreement. Knapp had the right to make the contract and the right to seek to make such a three–way contract, and his rights are not diminished because the proposed agreement was put into writing. Appellant's fourth point of error is overruled.

■ Fleming's remaining point of error complains that the trial court erred in permitting Knapp's recovery because Knapp & Co., a sole proprietorship and allegedly the contracting entity, did not have a real estate license issued in its name, although David B. Knapp personally was licensed and assumed name certificates for Knapp & Co. were properly filed. Plaintiff went to trial on his second amended original petition beginning "Comes now David Knapp d/b/a Knapp & Co., hereinafter Plaintiff ...." Plaintiff proved that he was properly licensed and that the assumed name certificates were filed. The listing agreement was signed "David B. Knapp" with "David B. Knapp, Knapp & Co." typed below the signature line. To require both Knapp and his sole proprietorship to be licensed would not be strict construction of the Real Estate Licensing Act (Tex.Rev.Civ.Stat.Ann. art. 6573a (1980)); it would be requiring double licensure in a manner that would contribute nothing to accomplishing the purpose of the act. The facts in this case are not similar to those in *Henry S. Miller Co. v. Treo Enterprises*, 585 S.W.2d 674, 675, 676 (Tex. 1979), in which the Supreme Court refused to permit an unlicensed corporation to recover a broker's commission. The Court in that case reiterated that the purpose of the Real Estate Licensing Act is "to eliminate or reduce fraud which might be occasioned on public by unlicensed, unscrupulous or unqualified persons." Here Knapp was the only person who could conduct the business of his sole proprietorship; he was properly licensed, and the assumed name certificates were a matter of public record. Fleming's fifth point of error is overruled.

Having considered and overruled each of appellant's points of error, the judgment of the trial court is affirmed.